## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK GOTTLIEB,<br><br>         Plaintiff,<br><br>    v.<br><br>THE HABIT RESTAURANTS, INC.,<br>CHRISTOPHER K. REILLY, ALLAN W.<br>KARP, IRA ZECHER, A. WILLIAM<br>ALLEN III, RUSSEL W. BENDEL, IRA<br>FILS, JOSEPH J. KADOW, and KARIN<br>TIMPONE,<br><br>         Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS** |

## COMPLAINT

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction announced on January 6, 2020, pursuant to which The Habit Restaurants, Inc. ("Habit" or the "Company") will be acquired by Yum! Brands, Inc. ("Yum!")

2.      On January 5, 2020, Habit's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Habit's stockholders will receive $14.00 per share in cash for each share of common stock they own.

3.      On February 4, 2020, in order to convince Habit's stockholders to vote in favor of

the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.      The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

## JURISDICTION & VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

**THE PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Habit common stock.

9.      Defendant Habit is a Delaware corporation and a party to the Merger Agreement. Habit common stock is traded on the NASDAQ under the ticker symbol "HABT."

10.      Defendant Christopher K. Reilly is a director of the Company.

11.      Defendant Allan W. Karp is a director of the Company.

12.      Defendant Ira Zecher is a director of the Company.

13.      Defendant A. William Allen III is a director of the Company.

14.      Defendant Russell W. Bendel is President, Chief Executive Officer, and a director of the Company.

15.      Defendant Ira Fils is Secretary, Chief Financial Officer, and a director of the Company.

16.      Defendant Joseph J. Kadow is a director of the Company.

17.      Defendant Karin Timpone is a director of the Company.

18.      The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

**FACTS**

19.      Habit is a burger-centric, fast-casual restaurant concept that specializes in preparing fresh, made-to-order chargrilled burgers and sandwiches featuring USDA choice tri-tip steak, grilled chicken and sushi-grade tuna cooked over an open flame. In addition, it features fresh made-to-order salads and an appealing selection of sides, shakes and malts. Habit was recently named Best

3

Regional Fast Food in USA Today's 2019 Best Readers' Choice Awards. The Habit opened in Santa Barbara, California in 1969.  Habit has since grown to over 270 restaurants, including locations in 13 states throughout California, Arizona, Utah, New Jersey, Florida, Idaho, Virginia, Nevada, Washington, Maryland, Pennsylvania, North Carolina and South Carolina, as well as seven international locations.

20.     On January 5, 2020, Habit's Board caused the Company to enter into the Merger Agreement.

21.     Pursuant to the terms of the Merger Agreement, Habit's stockholders will receive $14.00 in cash for each share of Habit common stock they own in an all-cash merger.

22.     The Merger Agreement further provides that Habit has agreed with Yum!, a North Carolina corporation, YEB Newco Inc., a Delaware corporation and wholly-owned subsidiary of YUM! ("Merger Sub").  Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, that Merger Sub will be merged with and into the Company, with the Company surviving as a wholly-owned subsidiary of Yum! (the "Merger").

23.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each Share of Class A Common Stock [of the Company] issued and outstanding immediately prior to the Effective Time and (ii) each Share of Class A Common Stock resulting from the Exchange (other than, with respect to the foregoing clauses (i) and (ii), any Shares described in Section 2.1(b) and any Dissenting Shares (such Shares, collectively, the "Excluded Shares")), in each case shall be converted into the right to receive $14.00, in cash, without interest (the "Merger Consideration")

24.     Section 5.3 of the Merger Agreement provides for a "no solicitation" clause that prevents Habit from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

(a) The Company shall not, shall cause its Subsidiaries and its and its Subsidiaries' respective directors, officers and employees not to, and shall instruct its and its Subsidiaries' respective other Representatives not to, directly or indirectly (i) initiate, solicit, or knowingly encourage or knowingly facilitate any inquiries regarding, or the making or submission of any offer or proposal that constitutes or would reasonably be expected to lead to, an Acquisition Proposal, (ii) engage or otherwise participate in negotiations or discussions with respect to any Acquisition Proposal, or (iii) provide any non-public information to any Person (other than Parent, Merger Sub, or any designees of Parent or Merger Sub) in connection with any Acquisition Proposal. The Company shall, and shall cause its Subsidiaries and its and its Subsidiaries' respective directors, officers and employees to, and shall instruct its and its Subsidiaries respective other Representatives to, immediately cease any solicitation, discussions, or negotiations with any Person (other than Parent, Merger Sub, or any designees of Parent or Merger Sub) with respect to any Acquisition Proposal, and, to the extent the Company has the right to do so, shall promptly request the return or destruction of all confidential information provided by or on behalf of the Company or its Subsidiaries to any such Person and its Representatives. The Company shall also promptly terminate such Person's and its Representatives' access to any data room relating to a possible Acquisition Proposal containing any such information. Subject to the other provisions of this Section 5.3, the Company and its Representatives may in any event (A) seek to clarify and understand the terms and conditions of any unsolicited inquiry or proposal made by any Person solely to determine whether such inquiry or proposal constitutes a *bona fide* Acquisition Proposal and (B) inform a Person that has made or, to the knowledge of the Company, is considering making an Acquisition Proposal of the provisions of this Section 5.3; provided, however, that any communication contemplated by the foregoing sentence shall be solely limited to the matters contemplated by the foregoing clauses (A) and (B). Any action taken or failed to be taken by any of the Company's Subsidiaries or any of the Company's or its Subsidiaries' respective Representatives that provided services to the Company or its Subsidiaries in connection with the Merger or the other transactions contemplated hereby which, if taken or failed to be taken by the Company, would constitute a breach of this Section 5.3(a) shall be deemed to constitute a breach of this Section 5.3(a) by the Company.

25.    In addition, Section 7.5(b) of the Merger Agreement requires Habit to pay a $13,125,000 "termination fee" to Yum! in the event this agreement is terminated by Habit and improperly constrains the Company from obtaining a superior offer.

26.     Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

27.     As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

28.     First, the Proxy omits material information regarding Habit's financial projections.

29.     With respect to Habit's financial projections, the Proxy fails to disclose, for each set of projections, all line items used to calculate (a) Adjusted Total Revenue, (b) Adjusted Restaurant Operating Costs, (c) Adjusted General and Administrative Expenses, and (d) Pre-Opening Costs.

30.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

31.     Second, the Proxy omits material information regarding the analysis performed by the Company's financial advisor Piper Sandler & Co. ("Piper") in connection with the Proposed Transaction.

32.     With respect to Piper's *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Piper in the analysis. This information must be disclosed to make the Proxy not materially misleading to Habit stockholders.

33.     With respect to Piper's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Piper in the analysis.

This information must be disclosed to make the Proxy not materially misleading to Habit stockholders.

34.     With respect to Piper's *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (i) the Company's projected unlevered free cash flows for fiscal year 2020 through fiscal year 2023, (ii) the Company's terminal value, (iii) the Company's non-TRA related net operating loss balance*,* (iv) Piper's basis for applying an EBITDA multiples range of 7.6x to 9.6x to determine terminal value, and (v) the individual inputs and assumptions underlying the range of discount rates of 10.9% to 15.9%.  This information must be disclosed to make the Proxy not materially misleading to Habit stockholders.

35.     With respect to Piper's *Premiums Paid Analysis*, the Proxy fails to disclose the transactions observed by Piper in the analysis.  This information must be disclosed to make the Proxy not materially misleading to Habit stockholders.

36.     The omission of the above-referenced material information renders the Proxy false and misleading.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the

time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

42.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

48.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

### **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 5, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*